UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LIBERTY MUTUAL INSURANCE COMPANY, )<br>)<br>Plaintiff, )<br>)<br>)<br>v. )<br>)<br>THE BLACK & DECKER CORPORATION, )<br>BLACK & DECKER, INC., BLACK & DECKER )<br>(U.S.) INC., EMHART CORPORATION, and )<br>EMHART INDUSTRIES, INC., )<br>)<br>Defendants. )<br>) | CIVIL ACTION<br>No. 96-10804-DPW<br>No. 1:04-CV-10648-DPW<br>  [Abarca Bostik]<br>No. 1:04-CV-10649-DPW<br>  [Alwell Asbestos]<br>No. 1:04-CV-10668-DPW<br>  [Maritime Asbestos]<br>No. 1:04-CV-10669-DPW<br>  [Maritime Hearing Loss]<br>No. 1:04-CV-10676-DPW<br>  [Pennsylvania Benzene]<br>No.1:04-CV-10670-DPW<br>  [Medway]<br>No. 1:04-CV-10665-DPW<br>  [PAS Fulton]<br>No. 1:04-CV-10675-DPW<br>  [PAS Oswego] |

**BLACK & DECKER'S MEMORANDUM IN OPPOSITION TO LIBERTY MUTUAL INSURANCE COMPANY'S SUPPLEMENTAL MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO THE FIVE LONG-TERM EXPOSURE CLAIMS AND THE PAS FULTON, PAS OSWEGO AND MEDWAY SITES**

**INTRODUCTION**

Liberty Mutual has moved for summary judgment asserting the Black & Decker is not entitled to a payment of prejudgment interest from Liberty Mutual on five long-term exposure ("LTE") claims[1] ("Five LTE Claims) and three environmental claims ("PAS/Medway Claims"),[2] following Liberty Mutual's tardy payment of defense costs. In its Summary Judgment Memorandum, Liberty Mutual does not deny that it agreed to defend Black & Decker in

---

[1] These claims are Abarca Bostik (No. 1:04-CV-10648-DPW), Alwell Asbestos (No. 1:04-CV-10648-DPW), Maritime Asbestos (No. 1:04-CV-10668-DPW), Maritime Hearing Loss (No. 1:04-CV-10669-DPW), and Pennsylvania Benzene (No. 1:04-CV-10676-DPW).

[2] These environmental claims are Medway (No.1:04-CV-10670-DPW), PAS Fulton (No. 1:04-CV-10665-DPW) and PAS Oswego (No. 1:04-CV-10675-DPW).

connection with these claims, but cannot show that it paid the claims in a timely manner. As a result, and as previously outlined by the Court, failure to pay invoices in a timely manner is a breach, entitling Black & Decker to damages. The best manner of calculating those damages is through an award of prejudgment interest, as well as an award of attorney's fees.

Liberty Mutual asserts that Black & Decker's reconsideration of an August 25, 2004 Order and Memorandum on Prejudgment Interest is barred on procedural grounds. However, this argument fails to acknowledge (1) that no judgment has yet been entered with regard to the LTE and PAS/Medway sites; and (2) the issues analyzed by the Court go beyond the original briefings of the parties, and raise issues that the parties themselves had not yet fully briefed. As a result, Black & Decker's Motion cannot be barred.

Finally, Liberty Mutual attempts to chip away at Black & Decker's interest claims by challenging the validity of various invoices and interest calculation methodologies. If those issues cannot be resolved by agreement, the Court should appoint a Master to consider and make findings on such issues.

Many of the issues raised by Liberty Mutual are addressed in Black & Decker's November 2, 2004 Memorandum in Support of its Motions for Prejudgment Interest and Attorney's Fees ("November Memorandum on Prejudgment Interest"), and are incorporated herein.

## ARGUMENT

**I.    Black & Decker Is Entitled To Prejudgment Interest For Liberty Mutual's Delayed Payments.**

As a result of Liberty Mutual's delayed payment of defense costs it agreed to assume some four years prior to ever making payments, Black & Decker has suffered damages. The Court's August 25, 2004 Order properly analyzes Liberty Mutual's obligation to pay defense

costs in a timely manner.  There the Court noted "[w]hile Liberty Mutual eventually reimbursed the defense costs, it did not timely fulfill that obligation for all of the bills submitted.  That in itself constitutes a breach."  This breach resulted in damages – the lost time value of the money Black & Decker was required to pay in defense costs.  In its Summary Judgment Memorandum, Liberty Mutual does not contest this point,[3] and such a finding is all that is required to award Black & Decker damages.

### A. Black & Decker Is Entitled To The Benefit Of A Judgment, Based On The Previously-Filed Pleadings.

Black & Decker has already suffered damages due to Liberty Mutual's delay in paying defense costs, and it should not suffer any further detriment due to the four-year delay in entering judgment on the undisputed record in this matter.  That delay is in part attributable to Liberty Mutual's choice in filing an action so large and so complicated that resolution of the many issues is taking years.  The record before the Court on the issue of defense costs is undisputed – Black & Decker was entitled to a timely defense from Liberty Mutual, which it never received, and judgment on this issue should enter in favor of Black & Decker.

The right to that judgment flows from the original complaint and counterclaim filed in this action.  Even though Liberty Mutual eventually made payment of the past due attorney's fees, that payment does not moot Black & Decker's right to entry of judgment on the issue of Liberty Mutual's breach of the duty to defend.  Such a payment is nothing more than a credit towards payment at judgment and does not alter the legal relationship of the parties as of the time the complaint and counterclaim were filed.  Since both Liberty Mutual and Black & Decker sought a declaration as to the rights and obligations of each party as of those dates, Black &

---

[3] "The nature of the damages incurred by Black & Decker as a result of this alleged breach of the duty of timely payment is the lost time value of money that Black & Decker had to pay on its own. . . ." Liberty Mutual's Summary Judgment Memorandum at 36.

Decker is entitled to judgment on the underlying issue, that Liberty Mutual was in breach of both the duty to defend, and the duty to make timely payments once the duty to defend was accepted.

Judgment on this issue should enter, or Black & Decker is entitled to the benefit of such a judgment. As such, the right to prejudgment interest then automatically attaches, pursuant to M.G.L. c. 231, § 6. "[I]nterest automatically attaches to the damage award, and 'need not [be] mentioned by the court.'" Starr v. Rubenstein, 2004 WL 1908147 (Mass. Mun. Ct. Boston A.D.) at *3 (internal citations omitted).[4]

### B.   Payment Of Compensation Other Than Prejudgment Interest Would Not Be In Accordance With Massachusetts Law And Policy.

An award of prejudgment interest is the most appropriate method under Massachusetts law fully to compensate Black & Decker for its losses, without creating a windfall for the breaching insurer. See Mill Pond Associates, Inc. v. E & B Giftware, Inc., 751 F. Supp. 299, 300 (D. Mass. 1990). It is "well understood" that prejudgment interest is designed to "compensate[] . . . for the loss of the use of money." Id. at 302 (citing Bernier v. Boston Edison Co., 380 Mass. 372, 388 (1980)). A finding that Black & Decker would be entitled to anything less than full compensation for its losses, at the rate established under section 6C, does not "accurately reflect[] either Massachusetts law or practice." McCarthy v. The Ground Round, Inc., 1998 WL 726604 (Mass. Super.) at *4 (criticizing Boston Children's Heart Foundation v. Nadal-Ginard, 73 F.3d 429, 442 (1st Cir. 1996)).

---

[4] As discussed in its November Memorandum on Prejudgment Interest, Massachusetts law applies to this matter, because the parties continue to address these issues as if Massachusetts law is controlling. See also November Memorandum on Prejudgment Interest at 6-7, n.3 (citing Mathewson Corp. v. Allied Mar. Indus., Inc., 827 F.2d 850, 853 n. 3 (1st Cir. 1987)).

4

The purpose of prejudgment interest is undisputed. It is designed to compensate a damaged party for the loss of use of its <u>monies</u>. "The word interest in its usual sense is the compensation fixed by the parties or allowed by law (1) for the use of money or (2) as damages for its detention." <u>Perkins School for the Blind v. Rate Setting Commission</u>, 383 Mass. 825, 835 (1981) (citations omitted). "Interest is awarded by law so that a person wrongfully deprived of the use of money should be made whole for his loss." <u>Id</u>. And, regardless of the current rate of interest in the market, or the federal T-bill rate, the General Court of Massachusetts has determined that in this Commonwealth, that compensation is to be at the rate of 12 percent. Such a determination is within the right of the legislature, and the courts should not second guess this right. See <u>Fratus v. Republic Western Ins. Co.</u>, 147 F.3d 25, 30 (1st Cir. 1998) ("[T]he appropriate rate for pre-judgment interest in a contract action is 12 percent. . . . the interest is automatically added by the clerk of the court."). <u>See also</u> November Memorandum on Prejudgment Interest at pp 8-9.

        **C.**      **Using The T-Bill Rate Would Not Fully Compensate Black & Decker For Its Losses.**

Use of some other method of compensation, such as awarding Black & Decker the lost time value of the money it was required to expend does not fully compensate Black & Decker for its losses. Under this type of methodology, and using a rate, such as the T-bill rate suggested by the Court in its Memorandum on Prejudgment Interest, Black & Decker would still not be made completely whole, as it would if Massachusetts prejudgment interest were to be awarded. Other courts have recognized this economic reality. The T-Bill rate, which reflects the rate at which the federal government, not a corporation, borrows money, does not fully compensate a plaintiff for lost value of its money. <u>See also</u> November Memorandum on Prejudgment Interest at pp. 6-8.

Denial of prejudgment interest would confer a benefit or windfall on Liberty Mutual. As Liberty Mutual concedes at page 37 of its Summary Judgment Memorandum, an appropriate rate would be based on the amount Liberty Mutual had been able to earn on the funds that it had not yet disbursed to Black & Decker. See Liberty Mutual's Summary Judgment Memorandum at 37. That rate is based on Liberty Mutual's actual performance, not the low T-Bill rate, which relates more to government borrowing, than private corporate borrowing.

### D. Payment Of The Invoices Prior To Entry Of Judgment Does Not Relieve Liberty Mutual Of Its Obligation To Pay Interest On Those Late-Paid Balances.

Despite Liberty Mutual's assertions to the contrary, payment of its obligations prior to the entry of judgment does not toll the continuing right of a party to interest on those late-paid obligations. See Pacific Insurance Co. v. Eaton Vance Management, 260 F. Supp. 2d 334, 346 (D. Mass 2003), rev'd in part & vacated in part on other grounds, 369 F.3d 584 (1st Cir. 2004). Liberty Mutual argues in a footnote that Eaton Vance is not persuasive authority, because on review, the First Circuit vacated the decision on other grounds. However, Liberty Mutual ignores the fact that this Court has already cited Eaton Vance, in determining that Black & Decker has, at a minimum, "a right to the loss of use of money that rightfully belonged to it." Id. Certainly, even if Eaton Vance is no longer the law of the District of Massachusetts, its reasoning on this issue, unrelated to the reversal, is persuasive.

The general rule in the First Circuit is that interest stops accruing after tender of payment. See Bogosian v. Woloohojian, 158 F.3d 1, 9 (1st Cir. 1998). This rule however, assumes that interest remains due, on the unpaid portions of the balance. For interest to stop accruing, it must first begin to accrue. Therefore, even though Liberty Mutual made tender of the overdue

6

principal – the amount of attorney's fees – it was still obliged to pay interest on those late payments until the principal was paid.

Black & Decker's claim is in accord with this rule. As noted in the documentation provided to Liberty Mutual, and as discussed in more detail below, interest begins running either as of date of payment, or within 60 days from the date of the invoice, as outlined by the Court. Interest on the balance stopped accruing when Liberty Mutual tendered its late payment of the principal due, in February 2002. The interest calculation, and thus the amount claimed, reflects this consideration. Further, no interest is claimed for any invoices submitted to Liberty Mutual after January 2002. See also November Memorandum on Prejudgment Interest at 4-6.

## II. Black & Decker's Interest Calculations Are Accurate.

### A. Prejudgment Interest Or Other Compensation Is Awarded Based On The Date Black & Decker Lost The Use Of Their Funds

As noted by the Court, the key point in time by which Black & Decker's right to a defense becomes manifest, and as a result its claim for attorneys fees and for interest on those late-paid fees arises, is at the time when the insured was "literally left to fend for itself." Memorandum on Post Trial Motions at 36. The right to fees does not depend on anything other than "whether coverage is ultimately determined to exist." Id. (citing Rubenstein v. Royal Insurance Co. of America, 429 Mass. 355, 360 (1999)). When coverage is determined to exist, as is the case here, and especially where Liberty Mutual itself admitted that it had a duty to defend the claims, then the date of notice becomes irrelevant in establishing when an insured's rights to recover fees begins.

This Court has determined that notice was not a prerequisite to coverage, but an "independent duty" of the insured. Id. at 36. Therefore, once a duty to defend is established, and whenever it is established, the duty attaches to the insurer and the defense obligation

7

commences. Notice is only relevant as to whether or not the insurer is prejudiced,[5] and the obligation of proof on that matter rests with the insurer. In any case, Liberty Mutual had many instances in which it could have assumed the defense of these claims, and rather than taking on its obligations under the insurance contract, it wrongfully denied those obligations. As a result, any delay by Black & Decker in producing the invoices is immaterial,[6] and does not effect its entitlement to reimbursement of those invoices, and interest for the delay in payment of those invoices.[7]

### B. Using A Commercially Reasonable Estimated Date Of Payment Is Reasonable.

The Court has previously outlined the parameters on which Black & Decker's interest claims are to be based. Following issuance of the August 25, 2004 Orders on Prejudgment Interest and on Post Trial Motions, Black & Decker recalculated its interest demand to reflect that guidance. Black & Decker provided a recalculated demand, showing the interest rate utilized, to Liberty Mutual.[8]

Black & Decker has produced thousands of invoices and other evidence of payment to Liberty Mutual in the course of this litigation. For almost all of the claims, both invoices and evidence of payment were available. However, evidence of payment to some local counsel

---

[5] "[I]n Massachusetts, the late-notified insurer is in exactly the same position as the timely-notified insurer." Memorandum on Post Trial Motions at 37.

[6] See Transcript of October 30, 1998 Hearing at 57:1-58:12, attached hereto as Exhibit A.

[7] Liberty Mutual is not entitled to some imaginary discount for its "good behavior" in allegedly paying the PAS/Oswego invoices in a timely manner. Subsequent payments do not extinguish the four-year-long delay in payment of any invoices at all, even though Liberty Mutual assumed the duty to defend.

[8] Black & Decker provided this information to Liberty Mutual expressly without waiving its position that it is entitled to recover Massachusetts statutory prejudgment interest, rather than just the lost time value of money. See Letter from Jack Pirozzolo to Ralph Lepore, dated October 25, 2004, annexed to the Affidavit of Janice Kelley Rowan at Exhibit R.

assisting on the LTE claims, despite diligent efforts, could not be found. In those instances, and based on the Court's analysis outlined in the Prejudgment Interest Memorandum, Black & Decker's interest calculation is based on payment of those invoices in a "commercially reasonable" payment period – in this case, 60 days from the date of the invoice. See Prejudgment Interest Memorandum at 17 (establishing that a commercially reasonable period is presumptively 60 days).

This assumption is further supported by the Affidavit of M. Clayton Roop, attached hereto as Exhibit B. Mr. Roop is Director of Corporate Risk Management for Black & Decker, whose duties include maintaining records of expenses in connection with the LTE claims. Mr. Roop affirms that Black & Decker's usual practice is to pay all local counsel invoices within 60 days of the invoice. See Exhibit B at ¶ 4. Mr. Roop has also affirmed that based on information reviewed to date, substantially all of the local counsel invoices have been paid. Id. at ¶¶ 5-7. Based on this Affidavit, it is fair to conclude that the local counsel invoices have been paid, and further, that Black & Decker's interest calculations are accurate, even when there is no actual proof of payment available. See ECDC Environmental, L.C. v. New York Marine and General Ins. Co., 1999 WL 595450 (S.D.N.Y.) (No. 96 Civ. 6033 (BSJ)) at *12 (An affidavit detailing methods and practices of payment of invoices may be reliable evidence that payments were made, and supports interest methodology calculation).

### C. Interest Charges Were Calculated Using Simple Interest, And The Claim Was Modified To Reflect Adjustments To Payments.

#### 1. Simple Interest.

Liberty Mutual asserts that Black & Decker's interest charges were calculated using compound interest. This is incorrect, and Liberty Mutual continues to fail to educate itself about the methodology utilized in calculating the interest on the LTE and PAS/Medway claims,

9

although Black & Decker has produced several documents containing detailed explanations, and has explained the methodology in multiple telephone conversations.

Interest on the LTE and PAS/Medway claims was calculated using simple interest only, in a straight-forward calculation which is explained in a footnote on each of the damages summary charts produced to Liberty Mutual. See e.g. Affidavit of Janice Rowan, Exhibit R (Interest on Abarca Bostik Defense Costs) at note (e). There, Black & Decker explained that interest was calculated using the rate in effect pursuant to 28 U.S.C. § 1961, on the date of payment, if available, or an estimated date of payment 60 days after the date of the invoice. Interest is calculated through the date on which payment was made by Liberty Mutual, in a simple interest calculation, and no interest was calculated on invoices which were submitted to Liberty Mutual after January 2002.

Use of any other value, including the unfounded "averaging" rate that Liberty Mutual supports, would not adequately compensate Black & Decker for its losses. The Liberty Mutual assertion that Black & Decker should enter into a complex accounting by which it changes the T-Bill rate weekly, over a 10-year period, highlights the inappropriateness of using the T-Bill rate, rather than the prejudgment interest rate. See Liberty Mutual's Summary Judgment Memorandum at 45-46. The calculation of interest should be a clerical function, not spawn an extensive accounting dispute for resolution by the Court. See Fratus, 147 F.3d at 30. If the T-Bill rate is appropriate, the rate in effect on the date payment was due is appropriate. Indeed, when post-judgment interest in calculated at the T-Bill rate, the rate in effect on the date of judgment is used throughout the post-judgment period. See 28 U.S.C. § 1961(a).

Liberty Mutual also argues that Black & Decker should not be allowed to apply the interest rates in effect from the mid- to late-1990s, on bills paid in the mid- to late-1990s because

so doing would result in some "windfall" to Black & Decker. This is incorrect. Under this methodology, as outlined by the Court, using any other rate than the one available in the market on the date of payment would result in a windfall to Liberty Mutual, and would fail fully to compensate Black & Decker for its losses. However, as outlined in its November Memorandum on Prejudgment Interest, even this fairer method of interest computation fails fully to compensate Black & Decker. The fairest and legally correct method to compensate Black & Decker is to calculate prejudgment interest as required by M.G.L. c. 231, § 6C.

Finally, the Liberty Mutual assertion that the interest rates on unspecified invoices are erroneous is not adequately presented to the Court. If Liberty Mutual were to identify the invoices and rates it deems appropriate, the issue could be adjudicated.[9]

### 2. Adjustments To Invoices.

When appropriate, he amount claimed for PAS/Medway and the LTE claims was modified to reflect adjustments to certain invoices. During the course of discovery, and the production of invoices and payment receipts to Liberty Mutual, Black & Decker learned that certain invoices had been modified, and Black & Decker's actual payments were for an amount less than the full invoiced amount. In these instances, the principal amount on which Black & Decker's claim for interest is based has been modified to reflect this reduced payment. These adjustments have been specifically described in the charts produced to Liberty Mutual. See e.g. Affidavit of Janice Rowan, Exhibit R (Abarca Bostik Defense Costs: Adjustments to Certain Miles & Stockbridge Invoices).

These invoices total a very small percentage of the claim, less than 1% of the total principal on which the interest claim is based. For example, on the chart relating to Abarca

---

[9] If that information concerning a particular entry were provided, and is correct, Black & Decker would agree to change its calculation.

11

Bostik, one Miles & Stockbridge invoice was reduced by $905.00, and the amount of principal of the entire claim is $77,518.11. Since the principal has been reduced to reflect this modified payment, the interest claim was similarly modified, and there is no issue to dispute.

      **D.    Liberty Mutual Cannot Now Challenge The Relevance Of Invoices It Has Already Paid.**

Liberty Mutual cannot now be heard to challenge the relevance of specific invoices that it has already paid, and which it never questioned at the time of presentment. Instead, if Liberty Mutual's challenges to Black & Decker's claims are left to picking through and discarding a handful of invoices (out of the thousands that have been produced), then Black & Decker respectfully submits that if these issues cannot be resolved by agreement, the Court should refer the parties to a Master.

In any event, Liberty Mutual had far more than a reasonable amount of time to review and reflect on these challenged invoices. According to the Liberty Mutual Summary Judgment Memorandum, the invoices were paid in 1985, 1986, and 1987, and were presented to Liberty for payment long before the 2002 payment date. Liberty Mutual has stated in other pleadings that part of its delay in payment was the time it took in evaluating these invoices. It cannot now, at this very late date, challenge invoices that it has already evaluated, and paid.

      **III.    Black & Decker's Motion For Pre-Judgment Interest Is Properly Before The Court.**

Procedurally, Liberty Mutual has misconstrued the posture of these filings. The issue of prejudgment interest with regard to the LTE and PAS/Medway claims is not before the Court on a Motion for Reconsideration. Although the Court outlined some general considerations of law in its August 25, 2004 ruling in response to the parties April 2004 briefing, there had been no

additional formal briefing on the matter since the Court divided the case into separate matters on April 19, 2004.

Even if these filings could be construed as motions for reconsideration, Liberty Mutual's arguments are misplaced. Liberty Mutual asserts that Black & Decker's Motion is barred because motions for reconsideration are controlled by Federal Rule of Civil Procedure 59(e), which provides in part that motions to amend or alter judgment must be filed no less than 10 days after entry of judgment. See Fed. R. Civ. Pro. 59(e). However, as Liberty Mutual well understands, and as was stated in the Joint Status Report of October 15, 2004, no judgment has been entered in regard to these claims. Instead, in ruling on Black & Decker's motions for interest and attorney's fees, in part as related to a different claim in this case, the Court set forth its ideas on the subject of prejudgment interest, in broader strokes then had been briefed. Thus, it is appropriate, at this point to set forth all of the facts and legal principles supporting Black & Decker's claims to an award of prejudgment interest. Certainly, time has passed between the Court's August 25, 2004 Order, and the filing of these motions, however, that time was due to the complex nature of this matter and the already full schedule, rather than any intransigence on Black & Decker's part. Liberty Mutual cannot successfully argue both sides of the same coin. It cannot claim there is a judgment, which bars Black & Decker from briefing these issues, but claim there is no judgment, which would entitle Black & Decker to interest on its claims.

The issues presented in these filings are appropriate for further consideration by the Court. The Court has had earlier briefings on this matter in April 2004, and its August Order raised questions that required further thought and consideration, on these same topics. The Court itself invited the parties to consider further the issues outlined in that Order. Memorandum or Prejudgment Interest at 7, n. 4 ("[I] have not had the benefit of the parties' briefings on this

topic. . . .") (referring to the question of whether Massachusetts law applies to Black & Decker's claims for prejudgment interest in the LTE and PAS/Oswego matters). Certainly, it is not to late to accept the Court's invitation to more fully brief and consider these issues.

## CONCLUSION

For all the foregoing reasons, Liberty Mutual's Motion for Summary Judgment with respect to the Five LTE Claims and the PAS/Medway Claims should be denied. Further, Black & Decker's Motion for an Award of Prejudgment Interest Regarding Abarca Bostik, Alwell Asbestos, Maritime Asbestos, Maritime Hearing Loss, Pennsylvania Benzene, Medway, PAS Fulton and PAS Oswego should be granted and Black & Decker's Motion for an Award of Prejudgment Interest and Attorney's Fees Regarding Abarca Bostik, Alwell Asbestos, Pennsylvania Benzene, Medway, PAS Fulton and PAS Oswego should be granted.

Respectfully submitted,

/s/ Jack R. Pirozzolo
Jack R. Pirozzolo BBO# 400400
Richard L. Binder BBO# 043240
Willcox, Pirozzolo & McCarthy
Professional Corporation
50 Federal Street
Boston, Massachusetts 02110
(617) 482-5470

Dated: November 16, 2004